**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERICA S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil Action No. 20-6175 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Erica S.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Plaintiff's request for supplemental security income and social security disability benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court remands the matter to the Administrative Law Judge ("ALJ") for further proceedings.

**I.   BACKGROUND**

Plaintiff was 34 years old when she first filed an application for supplemental social security income and disability insurance benefits, alleging a disability onset date of January 1,

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

2003. (AR 35, 183-84, 192-201, 288.)[2] Since Plaintiff was about ten years old, an arsenal of mental health professionals—including psychiatrists, psychologists, and therapists—treated her for various mental impairments. (*See id.* at 549, 856.) Her impairments include, among others, obsessive compulsive disorder, persistent depressive disorder, attention deficit/hyperactivity disorder, and generalized anxiety. (*Id.* at 549, 942, 950.) Plaintiff was hospitalized for these impairments at age eleven and then later spent three years in a residential home for mental health treatment. (*Id.* at 18.) After transitioning to outpatient treatment in 2013, Plaintiff saw a therapist about twice a month and her treating psychiatrist periodically. (*Id.* at 23, 356, 549-53.) Since 2003, Plaintiff has worked only "short term or part-time positions," including as an assistant at a local kennel near her parent's home where she lives. (*Id.* at 19, 37.)

In this appeal, the Court must answer two questions raised by Plaintiff. First, did the ALJ properly consider and explain his determinations concerning the medical opinions of Dr. Michael A. Giuliano, Plaintiff's treating psychiatrist for over two decades? (Pl.'s Appeal Br. 13-32, ECF 12.) Second, and along the same lines, did the ALJ reasonably evaluate the opinion of Plaintiff's therapist, Nancy Saxton-Lopez? (*Id.* at 32-37.) The boiled-down issue before the Court is whether substantial evidence supports the ALJ's decision that Plaintiff had a residual functional capacity ("RFC") to perform "[a] full range of work at all exertional levels" with certain limitations regarding involved instructions and contact with the public. (AR 18.) Importantly, the Court must determine whether it can follow the reasoning and explanation behind the ALJ's written decision. The Court begins with a brief background of the procedural posture and decision by the ALJ.

---

[2] The Administrative Record ("AR") is found at ECF Nos. 9 through 9-10. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

### A. Procedural Posture

Under 20 C.F.R. § 404.1563(c), Plaintiff was a younger individual during the relevant period. (AR 24, 36.) The Social Security Administration (the "Administration") denied her request for supplemental social security income and disability insurance benefits initially and on reconsideration. (*Id.* at 75-76, 107-18, 122-27.) Thereafter, Plaintiff requested a hearing (*id.* at 128-30), and the ALJ held that hearing on November 9, 2018 (*id.* at 33-47). The ALJ issued a written opinion, where he determined that Plaintiff was not disabled. (*Id.* at 10-31.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-5.) The instant appeal followed. (ECF No. 1.) Plaintiff filed her opening brief on September 7, 2021 (ECF No. 12), and the Commissioner filed her opposition brief on October 18, 2021 (ECF No. 13). Plaintiff replied on October 29, 2021. (ECF No. 14.)

### B. The ALJ's Decision

In the ALJ's December 12, 2018 written opinion, he determined that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 10-25.) In doing so, the ALJ set forth the five-step process for determining whether an individual is disabled. (*Id.* at 14-15 (citing 20 C.F.R. §§ 404.1520(a), 416.920(a)).) At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since January 2003, even though Plaintiff worked part-time at an animal shelter. (*Id.* at 15-16 (citing 20 C.F.R. §§ 404.1571, 416.971).) Generally, the ALJ found that Plaintiff never held a full-time job and was dependent on her family. (*Id.* at 24, 42, 44.) At step two, the ALJ found that Plaintiff suffered from several severe impairments, including obsessive-compulsive disorder, anxiety, attention-deficit/hyperactivity disorder, and depression. (*Id.* at 16 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 16-18 (citing 20 C.F.R.

3

§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) At step four, the ALJ concluded that Plaintiff "has no past relevant work." (*Id.* at 24 (citing 20 C.F.R. §§ 404.1565, 416.965).) At the fifth step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (*Id.* at 24 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969(a)).)

This appeal turns on the ALJ's assessment of Dr. Giuliano's medical opinion and Saxton-Lopez's reports. (*See generally* Pl.'s Appeal Br.) Specifically, Plaintiff argues that the "ALJ improperly ignored opinion evidence without adequate reasoning." (*Id.* at 13.) No dispute exists that the ALJ gave little weight to both opinions in determining Plaintiff's RFC. (AR 21-22.) What is left for this Court to resolve, then, is whether the ALJ's decision is supported by substantial evidence and adequately explained.

## II.   LEGAL STANDARD

### A.   Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B.   Establishing Eligibility

To be eligible for supplemental security income and disability insurance benefits, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 1382c(a)(3)(B), 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 1382c(a)(3)(D), 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920. For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 416.920(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 416.920(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to social security income benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permit them to resume previous employment. *Id.* § 416.920(a)(4)(iv). If claimants' RFC permits previous employment, claimants are not "disabled" and not entitled to social security income benefits. *Id.* § 416.920(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.* If the Commissioner cannot satisfy this burden, claimants will receive social security income benefits. 20 C.F.R. § 416.920(g).

### III.   DISCUSSION

Plaintiff appeals the Administration's Appeals Council's affirmance of the ALJ's decision, arguing that the ALJ unreasonably discounted Dr. Giuliano and Saxton-Lopez's opinions supporting a finding of disability. (Pl.'s Appeals Br. 13-37.) Plaintiff contends that, as a result,

remand is required because the ALJ's decision failed to provide adequate reasoning for finding these opinions unpersuasive. (*Id.* at 37.) The Court addresses each alleged error in turn.

### A. Treating Psychiatrist Dr. Giuliano's Medical Opinions

The Court first addresses Plaintiff's assertion that the ALJ's written decision as it relates to Dr. Giuliano is "unreasonable." (*Id.* at 30 (citing AR 21-22).) Specifically, Plaintiff contends that the ALJ disregarded settled law by rejecting treating psychiatrist Dr. Giuliano's opinions because he did not give function-by-function descriptions of what the claimant could do or include clinical observations. (*Id.* at 30-31 (citing *Putnam v. Saul*, No. 18-3524, 2010 WL 562960, at *5 (D.S.C. Feb. 5, 2020)).) At bottom, Plaintiff accuses the ALJ of cherry-picking certain facts while ignoring most of Dr. Giuliano's opinions without explanation. (*Id.* at 31-32.) Conversely, the Commissioner explains that the ALJ merely disregarded Dr. Giuliano's legal conclusions that Plaintiff was disabled and gave the rest of his medical opinions appropriate weight considering they were merely high-level treatment summaries. (Commissioner's Opp'n Br. 10 (citing AR 21).) The Commissioner further argues that despite Dr. Giuliano's status as Plaintiff's treating psychiatrist, that relationship alone did not entitle Dr. Giuliano's opinion "to great or controlling weight." (*Id.*)

The Court's review is deferential, and the requirement of finding substantial evidence is a low bar. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). This deferential standard presumes, however, that the ALJ created an adequate record by setting "forth sufficient findings to satisfy the reviewing court that the ALJ arrived at a decision through application of the proper legal standards, and upon a complete review of the relevant factual record." *Rubinson v. Comm'r of Soc. Sec.*, 96 F. Supp. 3d 386, 394 (D.N.J. 2015). In addition, "[w]hile an ALJ must give great weight to a claimant's treating physician, an ALJ may discredit the treating physician's opinion if other evidence

7

contradicts it."[3] *Rimel v. Astrue*, 521 F. App'x 57, 59 (3d Cir. 2013) (citing *Morales*, 225 F.3d at 317). For example, an ALJ may reject a treating physician's opinion if it is internally inconsistent or contradicted by other medical evidence. *Id.*

With the standard set, the Court looks to the ALJ's written decision to decipher why it assigned "little weight" to Dr. Giuliano's medical opinions notwithstanding that he treated Plaintiff since she was ten years old. (AR 19-21, 318.) The entirety of the ALJ's reasoning for dismissing Dr. Giuliano's medical opinions is excerpted from his written decision as follows:

> The undersigned notes Dr. Giuliano's opinions at various times in the period under review (Exhibit 2F, 10F, 15F, 17F). Although these opinions are provided by the claimant's treating psychiatrist, there are not function-by-function descriptions of what the claimant was capable of doing and they are unsupported by clinical observations. There is no complete mental status examination provided by Dr. Giuliano in the record.
> 
> ***
> 
> The undersigned is unable to give great weight to opinions because the record does not provide any mental status examination or clinical testing that would support these statements. Dr. Giuliano stated that the claimant's disability remained unchanged, with social interaction being a particular concern, but also noted that the claimant was dating for over [a] year. Accordingly, the undersigned gives little weight to Dr. Giuliano's medical opinions submitted in his various summary letters.
> 
> ***
> 
> Again, the undersigned gives little weight to the statements that the claimant is not capable of full time work, as it is both unsupported by the objective medical evidence, and not an assessment or function-by-function analysis of the claimant's residual functional capacity.

---

[3] Although the social security regulations have since changed how ALJs are instructed to evaluate treating physicians' opinions, because Plaintiff filed her claim before March 27, 2017, the parties agree the outmoded regulations control. (*See* Commissioner's Opp'n Br. 10 n.5).

(AR 19-22 (citing SSR 96-8p).)[4]

The Court finds that the ALJ's written decision is not supported by substantial evidence. As to the ALJ's contention that Dr. Giuliano did not provide a function-by-function analysis, that explanation misses the point. Although labeled treatment summaries, throughout several reports Dr. Giuliano detailed the following: extensive medication history (AR 453-54, 524-25), diagnoses (*id.* at 453-54, 549-53), mental limitations (*id.* at 453-54 ("serious symptoms causing impairment in social and occupational setting"); *id.* at 454 ("anxiety following an auto accident has limited both her driving and her use of public transportation")), ability to function (*id.* at 525 ("[p]revious events in her life caused exacerbation of depression and obsessionality resulting in her leaving part-time employment in 2007")), and review of prior medical examinations (*e.g., id.* at 453-54 ("lowest GAF in past year, 45"); *id.* at 525 ("Her present GAF score on Axis V is 55, moderate symptoms causing impairment in social and occupational settings."); *id.* at 550 (describing Hackettstown Child Study Team's observation and testing)). The information provided by Dr. Giuliano was still pertinent even if it did not elaborate on each of Plaintiff's functions—though Dr. Giuliano's reports undoubtedly described at least some functions. (*See, e.g., id.* at 553 ("depends on her family for transportation"); *id.* ("involuntary, intrusive, and unwanted thoughts pathognomonic of OCD . . . interfere with her concentration and make it difficult to complete tasks in a timely manner."); *id.* ("[o]bsessional preoccupations impair her social interaction").).

In any event, a "function-by-function analysis is not an ironclad requirement for medical source statements." *Russell v. Saul*, 448 F. Supp. 3d 170, 179 (D. Conn. 2020); *see also Putnam,*

---

[4] The Court agrees with the ALJ that settled law prohibits Dr. Giuliano from deciding the ultimate issue of whether Plaintiff is disabled or unable to work, as under 20 C.F.R. § 1527(d), that determination is reserved for the Commissioner. *See Schmidt v. Comm'r of Soc. Sec.*, 465 F. App'x 193, 197 (3d Cir. 2012) ("The Commissioner retains sole decision-making authority to determine whether a claimant is disabled.").

9

2020 WL 562960, at *5 ("The ALJ's notion that a treating physician's opinion is entitled to less weight because it fails to articulate a function-by-function analysis lacks any legal or logical support."). In other cases, courts have remanded because they found the ALJ "erred by assigning 'limited weight' to treating physician's opinion when Commissioner argued, *inter alia*, that physician did not do function-by-function analysis." *Parker v. Comm'r of Soc. Sec. Admin.*, No. 18-3814, 2019 WL 4386050, at *8 (S.D.N.Y. Sept. 13, 2019) (quoting *Laureano v. Comm'r of Soc. Sec.*, No. 17-01347, 2018 WL 4629125, at *13 (S.D.N.Y. Sept. 26, 2018)) ("[A] lack of function-by-function analysis by [physician] is not a good reason for discounting his opinion."). Given that the ALJ twice stressed he was assigning little weight to Dr. Giuliano's opinions because they lacked a function-by-function analysis, the Court takes the ALJ at his word and finds that he erred in doing so.[5]

The Court's analysis is not done, however, because "[i]f the ALJ still thoroughly consider[ed] the evidence as a whole and made his findings based on that analysis, as opposed to rejecting the opinion solely on a lack of a 'function-by-function' analysis, then the ALJ's findings can still be upheld." *Haas v. Saul*, No. 19-02189, 2021 WL 615053, at *6 (S.D. Cal. Feb. 17, 2021) (citing *Rivers v. Astrue*, No. 08-1824, 2009 WL 1160259, at *15-16 (N.D. Ill. Apr. 29, 2009)). Problematic here, however, is that the ALJ's remaining reasoning for disregarding Dr. Giuliano's opinions consists of only a few select quotes embedded in Dr. Giuliano's findings that may lend support to Plaintiff's ability to function in certain settings. (*See, e.g.*, AR 21 ("Dr. Giuliano stated that the claimant's disability remained unchanged, with social interaction being a particular

---

[5] The Court finds the same errors with the ALJ's assertion that no clinical observation or mental status examination by Dr. Giuliano was provided in the record. Putting aside the fact that Dr. Giuliano referenced these types of reports in his treatment summaries, the ALJ was still required to grapple with the rest of his medical opinions rather than outright dismiss them.

concern, but also noted that the claimant was dating over a year.").) The Court finds these few quotes insufficient, particularly given Dr. Giuliano's status as Plaintiff's treating psychiatrist since 1992 and persistence that Plaintiff is severely impaired. (*E.g.*, AR 453-54.)

On remand, the ALJ should detail specific medical evidence from the record, if any, that influences the weight he gives to Dr. Giuliano's opinions. Specifically, the ALJ should refer to outside inconsistent medical evidence or further explain why Dr. Giuliano's opinions are internally inconsistent. Moreover, should the ALJ find a function-by-function assessment "necessary," then he should "further develop the record . . . rather than . . . disregard [the] opinion entirely." *Stango v. Colvin*, No. 14-1007, 2016 WL 3369612, at *11 (D. Conn. June 17, 2016) (citing *Giebudowski v. Colvin*, 981 F. Supp. 2d 765, 778 (N.D. Ill. 2013)). This may include the ALJ affirmatively seeking a function-by-function analysis from Dr. Giuliano, which the Court views as particularly important given Dr. Giuliano's relationship to Plaintiff. *Parker*, 2019 WL 4386050, at *8 (collecting cases where district court found ALJs should seek function-by-function analysis if critical to their determinations). In sum, the ALJ should weigh all probative and available evidence, with consideration that Dr. Giuliano observed Plaintiff "over a prolonged period of time," and provide an explanation grounded in medical evidence with reasoning that the Court can follow. *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

### B. Therapist Saxton-Lopez's Opinions

Given the Court's decision to remand this matter, it need not spend long on the ALJ's assessment of Saxton-Lopez because it finds many of the same explanatory shortcomings. The ALJ ultimately gave "some weight" to Saxton-Lopez's opinions while noting they are not from an acceptable medical source. (AR 22.) The ALJ also found as follows:

> However, as the record does not show any sufficient increase in medication dosages, frequency of therapy visits or inpatient hospitalization, the undersigned gives little weight to the portion of

11

> this opinion that implies the claimant would be unable to have a full
> -time job or sustain herself independently.

(AR 22.) As the ALJ noted in the above excerpt, Saxton-Lopez opines that Plaintiff's obsession, compulsions, anxiety, and depression "continue to cripple her ability to have a full time job." (*Id.* at 534.) The record also supports that Plaintiff did not hold a full-time job while she was in inpatient treatment and in the years that followed, since at least 2003. (*See, e.g.*, AR 393-95, 434-35, 533.) But the ALJ's written decision does not explain why Plaintiff's consistent medical treatment weakens Saxton-Lopez's opinions regarding Plaintiff's employment capabilities. The ALJ may have disagreed with Saxton-Lopez's conclusion because, in his opinion, Plaintiff maintained the same treatment over the course of several years while also working part time at the shelter. But this type of explanation is wholly absent from the written decision (*see id.* at 19-22) and "[t]he [C]ourt has to be able to trace the path of the ALJ's reasoning from evidence to conclusion." *Britney S. v. Berryhill*, 366 F. Supp. 3d 1022, 1026 (N.D. Ill. 2019) (citations omitted); *Davis v. Comm'r of Soc. Sec.*, No. 19-1431, 2020 WL 5701921, at *4 (W.D. Pa. Sept. 24, 2020) ("The ALJ failed to explain how Plaintiff's treatment history was conservative or how the objective observations suggested milder limitations.").

Finally, and similar to the above, should the ALJ choose to assign little weight to Saxton-Lopez's opinions, he should articulate the reason based on external medical evidence or explain why the opinions are not internally consistent.[6] Because even considering the fine line between cherry-picking "facts that support a finding of non-disability while ignoring evidence that points

---

[6] The Court also finds muddled the ALJ's decision to rebut Saxton-Lopez's opinions with select quotes from Dr. Giuliano's treatment summary. (*E.g.*, AR 22 ("The record showed that her psychiatrist stated the claimant could make decisions about her medical treatment, the claimant could travel independently to her part-time job, handle a checking account, and had friendships.").) Dr. Giuliano unambiguously found Plaintiff severally impaired such that his medical opinions, read in full, bolsters (not contradicts) Saxton-Lopez's conclusions.

to a disability finding" and the more neutral act of weighing the evidence, the touchstone is a "logical bridge from the evidence to [the ALJ's] conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). For Saxton-Lopez, as with Dr. Giuliano, the Court fails to see the logical bridge that led to discrediting the opinions of record.

## IV.  CONCLUSION

For the above reasons, the Court will remand the written decision of the ALJ. The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE